*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

FOX POINTE ASSOCIATION,

        Plaintiff-Appellee,

v

MARY ELIZABETH RYAL,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 344232
Washtenaw Circuit Court
LC No. 16-001098-CB

---

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Defendant, Mary Elizabeth Ryal, appeals by right the trial court's order granting summary disposition in favor of plaintiff, Fox Pointe Association (FPA), pursuant to MCR 2.116(C)(9) and (10). The trial court also awarded FPA $15,836 in attorney fees and costs. We affirm the order granting summary disposition and the award of fees and costs and remand the case to the trial court for a determination of additional attorney fees incurred on appeal.

This case arises from Ryal's alleged violations of bylaws, a master deed, and policy rules applicable to her site condominium unit and administered by FPA. Ryal purchased the unit in 2013. In late 2015, FPA became aware that alterations had been made to the condominium unit's entrance door without permission as required by the master deed and bylaws.[1]

---

[1] Article 9.1 of the Fox Pointe Master Deed provides:

> A Co-owner may make improvements or alterations to a Condominium Unit that do not impair or diminish the appearance of the Project or the view, privacy or other significant attribute of any Unit which adjoins or is proximate to the Unit, subject to the approval of the Developer as provided in § 6.3 of the Bylaws during the Development Period, and thereafter subject to the approval of the Association.

In pertinent part, Article 6.3(a) of the Fox Pointe Bylaws provides:

Specifically, FPA claimed that no permission had been given to install a square door lock, a pewter-colored lever door handle,[2] and new, larger address numbers on the unit's door. Additionally, FPA later claimed a violation on the basis of the color of the door itself, asserting that it was not the required shade of white and did not match the rest of the doors in the development.

Over the next several months, FPA sent letters to Ryal regarding the alleged violations and assessed increasing fines after Ryal failed to make requested changes to the door. Eventually, FPA sent a final letter informing Ryal that it would initiate legal proceedings if she failed to make the changes. Ryal did not make any changes to her condominium unit's door. FPA then commenced the instant suit, filing a complaint that sought injunctive relief requiring Ryal to alter the shape of the door's lock, the size and style of the address numbers, the color of the door, and the color of the door's lever handle. In support of its position, FPA cited Article 9.1 of the master deed, Article 6.3(a) of the bylaws, and an entrance door policy.[3] Ryal took the stance that she had not painted the door or changed the address numbers on the door; they were exactly how they appeared when she purchased the condominium unit in 2013. She also contended that she installed the lever-type door handle as part of an "immediate repair," describing the handle as an "emergency handicapped accessible replacement." Ryal asserted that she was physically disabled. She claims that she never installed the square lock, just the lever handle.

FPA filed a motion for summary disposition pursuant to MCR 2.116(C)(9) and (10) before discovery took place. The trial court granted the motion following a hearing and awarded FPA attorney fees and costs. This appeal ensued.

On appeal, Ryal contends that summary disposition was improperly granted because no discovery had taken place, because FPA's factual assertions were disputed, and because there

---

No Co-owner shall make any alterations, additions or improvements to any Common Element, nor make changes to the exterior appearance or structural members of his or her Unit without the prior written approval of the Association. The Association shall not approve any alterations or structural modifications which would jeopardize or impair the soundness, safety or appearance of the Project and the Association may provide plans and/or specifications required to be used for any particular improvement . . . .

[2] FPA's complaint about the door handle solely concerned its color.

[3] About five months before the action was filed against Ryal and three months before the final warning letter was mailed, FPA adopted certain rules specifically addressing entrance doors, including rules requiring approval of any alteration or modification of "locks, door numbers, handles, and storm doors[.]" The entrance door policy allows door handles of the lever or knob variety, and it provides that all "entrance door handles, locks and numbers shall be polished or bright brass in color." Under Article 6.7 of the bylaws, FPA did have the authority to adopt, enforce, and even amend reasonable rules and regulations in the interest of the community.

were factual issues regarding waiver and whether a contractual violation occurred. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). A master deed and associated bylaws are contractual in nature, and we review de novo the interpretation and application of contracts. *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009).

In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the governing principles with respect to a motion for summary disposition brought under MCR 2.116(C)(10), stating:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).[4]

In pertinent part, MCL 559.153 provides that "[t]he administration of a condominium project shall be governed by bylaws recorded as part of the master deed, or as provided in the master deed." "Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). In addition, "[c]ondominium bylaws are interpreted according to the rules governing the interpretation of a

---

[4] Summary disposition had also been granted under MCR 2.116(C)(9), which provides for the entry of a judgment on a claim when "[t]he opposing party has failed to state a valid defense to the claim asserted against him or her." Because it is apparent that the trial court considered information beyond the pleadings, we shall solely consider MCR 2.116(C)(10). *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016).

contract." *Id.*[5]  MCL 559.206(a) provides that "[f]ailure to comply with any of the terms or provisions of the condominium documents, shall be grounds for relief, which may include without limitations, an action to recover sums due for damages, injunctive relief, foreclosure of lien if default in payment of assessment, or any combination thereof."

"[P]roperty owners are free to attempt to enhance the value of their property in any lawful way, by physical improvement, psychological inducement, *contract*, or otherwise." *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) (quotation marks omitted).  "Under Michigan law, a covenant constitutes a contract, created by the parties with the intent to enhance the value of property.  As such, a covenant is a valuable property right." *Village of Hickory Pointe Homeowners Ass'n v Smyk*, 262 Mich App 512, 515; 686 NW2d 506 (2004).  This Court further explained:

> It is a well-understood proposition that a breach of a covenant, no matter how *de minimis* the damages, can be the subject of enforcement . . . . If the construction of the instrument be clear and the breach clear, then it is not a question of damage, but the mere circumstance of the breach of the covenant affords sufficient ground for the Court to interfere by injunction. [*Id*. at 516 (quotation marks omitted; ellipsis in original).]

With respect to the square door lock, the pewter-colored lever door handle, the address numbers on the door, and the color of the door, we note there appears to be no dispute that either Ryal or a former owner made the changes without FPA's written approval as required by Article 6.3(a) of the bylaws.  But it is necessary for us to dig deeper because of the nature of the injunctive relief sought by FPA.

In regard to the door's lever handle, FPA complained about the handle's color and not the fact that it was a lever style handle.  In the complaint, FPA requested an order requiring Ryal "to paint or replace the recently installed door handle . . . [with] the approved bright brass color." With respect to the color of the door itself, FPA requested an order requiring Ryal to "paint or replace the recently installed new entrance door the approved Sherwin Williams Super Paint Glass Sheen code LV 13488 or a substantially similar color matching the other units in the [development]."  As to the address numbers on the door, FPA requested an order requiring Ryal to "replace the identification numbers on the door to match the appropriate style and size similar to other units in the [development]."  Finally, in the complaint and in connection with the square door lock, FPA requested an order requiring Ryal to "replace the square door lock with a door lock that matches the other units in the [development]."

---

[5] "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924).  In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999).

Viewed in the context of the relief requested, the relevant question is whether FPA had the authority under the master deed, bylaws, or the entrance door policy to make these particular demands. If the authority existed, the next question is whether Ryal was in compliance with the requirements set forth in the documents relative to the door, such that FPA was not entitled to injunctive or equitable relief.

We conclude that the entrance door policy dictated the color of the door handle. The policy requires "door handles" to "be polished or bright brass in color." Therefore, FPA had the authority to demand that Ryal's door handle be brass in color. The door handle that Ryal installed was pewter colored; therefore, it did not comply with the requirement for a brass colored handle.[6] Accordingly, when Ryal refused to change the color of the door handle, she was in violation of the entrance door policy, and FPA was entitled to injunctive relief as a matter of law.

The entrance door policy does not include any specific requirements as to the shape of a lock, the size and style of address numbers, and the color of a door.[7] The entrance door policy, however, does state that there must be approval of any modifications or alterations to a door, "including but not limited to locks, door numbers, handles . . . ." This language effectively gives FPA the authority to dictate specific requirements regarding the shape of a lock, the size and style of address numbers, and the color of a door through the application and approval process. And the expressed purpose of the entrance door policy is to "maintain the aesthetic appearance" of the development. FPA was permitted to require that Ryal's entrance door match others in the condominium project in order to maintain the aesthetic appearance of the development. As reflected in Article 6.3(a) of the bylaws, FPA's authority to approve or reject changes to the exterior of a unit is not without limits—approval is not permitted if it would jeopardize or impair the soundness, safety, or appearance of the development. There is no indication that the particular demands made by FPA regarding door color, address numbers, and lock shape would jeopardize or impair the soundness, safety, or appearance of the complex—just the opposite.

Having recognized FPA's authority to make its demands, we next conclude that the existing features of Ryal's door, i.e., the shape of the lock, the color of the door, and the style and size of the address numbers were not consistent with FPA's requirements. There is no dispute about the inconsistencies. Accordingly, when Ryal refused to make the requested changes, she was in violation of the entrance door policy, and FPA was entitled to injunctive relief as a matter of law.

---

[6] Contrary to Ryal's argument, we construe the entrance door policy as requiring door handles to be brass in color, with the additional requirement being that the brass handle be polished or bright. We reject Ryal's distorted interpretation that door handles can be bright brass in color or any other color as long as the handle is polished.

[7] The entrance door policy does provide that "[a]ll storm doors shall be white Trapp model 108 self-storing doors or visual equivalent." The bylaws and master deed do not list any particular door requirements.

Ryal, citing Article 9.1 of the master deed, maintains that there is a factual dispute regarding whether the alterations impaired or diminished the appearance of the complex; therefore, summary disposition was improper. It is true that the master deed permits the owner of a unit to make improvements or alterations that do not impair or diminish the appearance of the condominium project. The problem with this argument is that neither Ryal nor the former owner went through the required procedure of seeking FPA approval. We cannot support the proposition that a unit owner can unilaterally make alterations to his or her unit without approval by the governing association and then avoid any penalty or consequence by arguing after the fact that the alteration did not impair or diminish the complex's appearance.

Ryal also argues that she made no changes to the color of the door, the address numbers, and to the lock, which were as they currently appear when she purchased her condominium unit. This argument does not undermine our ruling. When Ryal purchased the unit she became subject to the requirements of the master deed and the bylaws, and the entrance door policy was not even adopted until after her purchase, which she was also required to follow. See MCL 559.165 ("Each unit co-owner, tenant, or nonco-owner occupant shall comply with the master deed, bylaws, and rules and regulations of the condominium project and this act."). Whether Ryal made any of the alterations or modifications herself is irrelevant for purposes of the injunctive relief sought by FPA. FPA requested and was entitled to compliance with requirements pertaining to doors, and Ryal repeatedly failed to comply with FPA's requests.

Ryal argues that the violations were waived because most of them had existed when she purchased her unit, yet FPA had not acted on them. Ryal also claims the existence of other door violations in the development, further supporting waiver. But Article 6.10(c) of the bylaws provides:

> The failure of the Association to enforce any right, provision, covenant or condition which is granted by the Condominium Documents shall not constitute a waiver of the right of the Association to enforce such right, provision, covenant or condition in the future.

Ryal is bound by the bylaws. Accordingly, we reject Ryal's waiver argument. Ryal raises in cursory fashion some other defenses, e.g., laches, but they were not properly preserved below, *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993), and/or they are not adequately briefed on appeal, *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). Accordingly, they are rejected. Moreover, Ryal has not shown that discovery stands a fair chance of uncovering factual support for her position. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645-646; 828 NW2d 99 (2012).

In sum, the trial court did not err in granting FPA's motion for summary disposition. FPA also asks this Court to remand this case to the trial court for a determination of attorney fees

and costs incurred on appeal. Neither party disputes the amount of attorney fees awarded to FPA in the lower court proceedings.[8]

Article 17.2 of the bylaws provides:

> In any proceeding arising because of an alleged default by any Co-owner, the Association, if successful, will be entitled to recover the costs of the proceeding and such reasonable attorneys' fees (not limited to statutory fees) as may be determined by the court, but in no event will any Co-owner be entitled to recover such attorneys' fees.

Additionally, MCL 559.206(b) states:

> In a proceeding arising because of an alleged default by a co-owner, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent the condominium documents expressly so provide.

FPA is entitled to attorney fees for the work completed on the appeal. Both the bylaws and the statute provide that FPA is entitled to recover the costs of "the proceeding." In *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 684; 713 NW2d 814 (2006), this Court held that under MCL 559.206(b) and governing bylaws, the plaintiff condominium association was entitled to attorney fees and costs incurred in litigation after summary disposition was granted to the association. In *Windemere Commons*, the trial court had determined that the defendant condominium owners had violated bylaws by attaching a flag holder to the outside of their unit and displaying a Marine Corps flag without obtaining prior written permission. *Id.* at 682. This Court reversed the trial court's refusal to award attorney fees and costs to the association. *Id.*

In the case before us, FPA initiated the legal action or proceeding to obtain injunctive relief that would require Ryal to comply with the bylaws, master deed, and entrance door policy. Participation in this appeal was required to achieve that goal, and it was an integral part of the legal proceeding filed by FPA. As a result, FPA is entitled to a remand for a determination of additional attorney fees and costs.

---

[8] In Ryal's brief on appeal, she states that she is solely challenging the order granting summary disposition in favor of FPA, noting that if she prevails on appeal, it would be expected that the award of attorney fees would be vacated. She has not prevailed. Ryal further indicates that "for purposes of this appeal, she does not otherwise contest the court's award of attorney fees, such as their basis in the parties' contract, the factors considered by the court, or the amount."

We affirm the trial court's order granting summary disposition and awarding FPA attorney fees and costs, but we remand for further proceedings to determine additional attorney fees and costs incurred on appeal. We do not retain jurisdiction. Having fully prevailed on appeal, FPA is awarded taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher