CARON v CRANBROOK EDUCATIONAL COMMUNITY

Docket No. 305486. Submitted September 12, 2012, at Detroit. Decided October 4, 2012. Approved for publication November 29, 2012, at 9:10 a.m.

Katie Martineau Caron and Kevin Caron brought an action in the Oakland Circuit Court against Cranbrook Educational Community, the Christman Company, David W. Osler, David W. Osler Associates, Rafael Moneo, and Moneo Brock Studio, LLC, after Katie Caron, an art instructor at Cranbrook, was injured when a portable room partition that served as a wall of her classroom fell on her when she attempted to move it. The court, Phyllis C. McMillen, J., granted Cranbrook's motion for summary disposition on the ground that plaintiffs' action was barred by the exclusive-remedy provision of the Worker's Disability Compensation Act, MCL 418.131(1). Plaintiffs did not appeal this order. The court also granted the motions of Christman, the Osler defendants, and the Moneo defendants in three separate orders, ruling that plaintiffs' cause of action against them was time-barred by MCL 600.5839, which prevents a person from maintaining an action against a state-licensed architect, professional engineer, or contractor for bodily injury arising out of the defective or unsafe condition of an improvement to real property more than six years after the improvement was occupied, used, or accepted. Plaintiffs appealed these three orders.

The Court of Appeals *held*:

1. The court properly granted summary disposition because, although the room partition that caused the injury was fully portable, it nevertheless constituted an improvement to real property under MCL 600.5839; therefore, that provision time-barred plaintiffs' action. MCL 600.5839 provides that a person may not maintain an action to recover damages for bodily injury arising out of the defective or unsafe condition of an improvement to real property against any state-licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement. The portable room parti-

tion that caused the injuries was installed in 2002, and the accident giving rise to the action occurred in June 2009. To determine whether the portable room partition constituted an improvement to real property, it was necessary to consider (1) the general nature of the portable room partition, (2) whether the portable room partition was an integral component or essential to the operation of the art classroom addition; (3) whether the purchase, placement, and utilization of the portable room partition required the expenditure of labor and money and increased the usefulness of, added value to, bettered, or enhanced the capital value of the art classroom addition in relationship to the structure's intended use and purpose; and (4) the permanence of the portable room partition, taking into consideration whether it was affixed, bolted, mounted, or otherwise physically annexed to the art classroom addition and whether its placement has been or was intended to be longstanding or for an indefinite period, remembering that permanent does not mean eternal and that the ability to remove an object without damaging realty does not preclude a finding of permanence. The portable room partition was intended and installed to serve as a wall, required an expenditure of labor and money, increased the usefulness of the art classroom addition by providing space and flexibility for art classes and studio projects, and, although fully portable, was substantial, custom-designed, and intended to be permanent. Accordingly, the portable room partition was constructively annexed to the art classroom addition and properly considered an improvement to real property under MCL 600.5839.

2. The trial court did not err by granting summary disposition before discovery was complete with regard to whether the portable room partition increased the value of the art classroom addition. It was reasonable to infer that the portable room partition increased the value of the art classroom addition because of its nature and characteristics, its purchase and installation costs, and the benefits of using it to create and adjust instructional and studio space. Summary disposition may be proper before discovery is complete if further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion. The party opposing a summary-disposition motion because discovery is not complete must provide some evidence that a factual dispute exists. Plaintiffs failed to identify any prospective evidence that the portable room partition added no capital value, and there was no fair chance that any such evidence existed.

Affirmed.

LIMITATION OF ACTIONS — NEGLIGENCE — ARCHITECTS — ENGINEERS — BUILDING
    CONTRACTORS — IMPROVEMENTS TO REAL PROPERTY.

    MCL 600.5839 provides that a person may not maintain an action to
recover damages for bodily injury arising out of the defective or
unsafe condition of an improvement to real property against any
state licensed architect or professional engineer performing or fur-
nishing the design or supervision of construction of the improvement,
or against any contractor making the improvement, unless the action
is commenced within six years after the time of occupancy of the
completed improvement, use, or acceptance of the improvement; the
following factors should be examined in determining whether an
addition constitutes an improvement to real property: (1) the general
nature of the addition, (2) whether the addition is an integral
component or essential to the operation of the property, (3) whether
the purchase, placement, and utilization of the addition required the
expenditure of labor and money and increased the usefulness of,
added value to, bettered, or enhanced the capital value of the
property in relationship to the property's intended use and purpose,
and (4) the permanence of the addition, taking into consideration
whether it was affixed, bolted, mounted, or otherwise physically
annexed to the property and whether its placement has been, or was
intended to be, longstanding or for an indefinite period; the fact that
an addition may be removed without damaging the property does not
preclude a finding of permanence.

*Donald M. Fulkerson* for Katie Martineau Caron and
Kevin Caron.

*Harvey Kruse, P.C.* (by *Larry W. Davidson* and
*Stephanie Marino Anderson*), for the Christman Com-
pany.

*Plunkett Cooney* (by *Jeffrey C. Gerish* and *Scott H.
Sirich*) for David W. Osler, David W. Osler Associates,
Inc., Rafael Moneo, and Moneo Brock Studio, L.L.C.

Before: MURPHY, C.J., and MARKEY and WHITBECK, JJ.

MURPHY, C.J. Plaintiffs Katie Martineau Caron and
Kevin Caron appeal as of right the trial court's orders
granting summary disposition in favor of defendants

The Christman Company; David Osler and David Osler Associates, Inc. (collectively "Osler"); and Rafael Moneo and Moneo Brock Studio, L.L.C. (collectively "Moneo"). We affirm.

On June 22, 2009, plaintiff Katie Martineau Caron (hereafter "Caron") suffered serious injuries when a T-shaped, three-part portable room partition (PRP) fell on her as she and a graduate student attempted to move the PRP on its casters (wheels) in order to expand the space in which Caron, an art instructor, was going to teach a ceramics class at the Cranbrook Academy of Art. At the time, Caron was employed by defendant Cranbrook Educational Community (Cranbrook). The incident occurred in an "art classroom addition" that had been constructed as part of a larger construction project at the academy known as the New Studios Building project, which was completed in the fall of 2002. Allegedly, Christman designed, manufactured, and sold the PRP itself as well as other PRPs used in the art classroom addition.[1] Moneo and Osler provided architectural design services in connection with the construction project, and the designs included and incorporated the placement and utilization of numerous PRPs. The PRPs are used, as envisioned, to satisfy Cranbrook's ever-changing needs regarding the number, size, and shape of individual rooms employed for art instruction and studio work within the art classroom addition, which itself is a structure containing a large area of open space bordered by standard immovable walls (the parties refer to these walls as the "architectural" walls).

---

[1] We note that defendants contend, as supported by affidavits, that Christman was simply the general contractor on the construction project. Defendants maintain that subcontractor Wally Kosorki & Co, Inc., actually constructed the PRPs, and there is a work-change order in the record signed by Christman and Cranbrook that refers to the installation of PRPs by Kosorki. Ultimately, Christman's status is irrelevant to resolution of this appeal.

In April 2010, plaintiffs filed a 19-count complaint against Cranbrook, Christman, Osler, and Moneo, alleging various causes of action arising out of the design, construction, sale, and architectural use and incorporation of the PRP and the incident in which the PRP fell on Caron. The claims by plaintiff Kevin Caron were based on loss of services, society, companionship, and consortium in relationship to his injured wife. Cranbrook filed a motion for summary disposition, arguing that plaintiffs' action was barred by the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.131(1). The trial court granted Cranbrook's motion, and plaintiffs have not appealed that order. Over time, defendants Christman, Osler, and Moneo filed separate motions for summary disposition under MCR 2.116(C)(7) and (10), each arguing that MCL 600.5839 barred plaintiffs' lawsuit. The crux of this case and appeal is whether the PRP that fell on Caron constituted "an improvement to real property" under MCL 600.5839, which provides in relevant part:

> (1) A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:

> (a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

Plaintiffs do not contest that MCL 600.5839 generally applies to defendants, considering their profes-

sional fields, nor do plaintiffs dispute that installation of the PRPs was completed in the fall of 2002. Given that the accident occurred in June 2009, which, in light of plaintiffs' concession, is more than "[s]ix years after the time of occupancy of the completed improvement, use, or acceptance of the improvement," MCL 600.5839(1)(a), the statute would bar plaintiffs' lawsuit if the PRP constituted "an improvement to real property."

At the summary disposition hearing, defendants maintained that the PRP, or its installation, constituted an improvement to real property, thereby implicating the statute, and plaintiffs argued to the contrary, focusing on the contention that the PRP was not affixed or annexed to the realty. The trial court found that the PRPs are "substantial" and were "part and parcel" of the art classroom addition and studio construction project completed in 2002. The court ruled that the PRPs "were a capital improvement to the property such that they qualif[ied] under [MCL 600.5839] . . . ." In three separate orders, the trial court granted defendants' motions for summary disposition under MCR 2.116(C)(7).[2] Plaintiffs appeal as of right.

---

[2] We note that subsection (1)(b) of MCL 600.5839 provides that an action, under certain enumerated circumstances, can also be commenced within the following period:

> If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of *gross negligence* on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than *10 years* after the time of occupancy of the completed improvement, use, or acceptance of the improvement. [Emphasis added.]

Plaintiffs' action was filed less than one year after the incident and within 10 years of completion of the art classroom addition; therefore, the action would have been timely if gross negligence was involved, assuming

This Court reviews de novo a trial court's decision on a motion for summary disposition, a determination that an action is time-barred, and questions of statutory construction. *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 40; 709 NW2d 589 (2006); *Pitsch v ESE Mich, Inc*, 233 Mich App 578, 600; 593 NW2d 565 (1999). MCL 600.5839 serves as a statute of repose and as a statute of limitations that can result in an action's being time-barred. *Ostroth*, 474 Mich at 38-39. Summary disposition is proper when a "claim is barred because of . . . [a] statute of limitations . . . ." MCR 2.116(C)(7). In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court, addressing a motion brought pursuant to MCR 2.116(C)(7), observed:

> Under MCR 2.116(C)(7) . . . , this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

This appeal concerns the construction and applicability of MCL 600.5839, and in *McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517 (2010), our Supreme Court recited the governing principles regarding the interpretation of a statute:

---

satisfaction with the one-year discovery provision. The trial court gave plaintiffs seven days to amend their complaint to add allegations of gross negligence. Plaintiffs, however, chose not to amend their complaint, and there are no appellate issues concerning MCL 600.5839(1)(b).

The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. When reviewing a statute, all non-technical words and phrases shall be construed and understood according to the common and approved usage of the language, MCL 8.3a, and, if a term is not defined in the statute, a court may consult a dictionary to aid it in this goal. A court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme. Where the language used has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted. [Citations and quotation marks omitted.]

By enacting MCL 600.5839, the Legislature chose to limit the liability of architects, engineers, and contractors in order to relieve them of the potential burden of defending against lawsuits commenced long after an improvement was completed. *Ostroth*, 474 Mich at 43, citing *O'Brien v Hazelet & Erdal*, 410 Mich 1, 14; 299 NW2d 336 (1980); see also *Ali v Detroit*, 218 Mich App 581, 587-588; 554 NW2d 384 (1996) (purpose of MCL 600.5839 is to "shield architects, engineers, and contractors from stale claims and relieve them of open-ended liability for defects in workmanship"). In *Ostroth*, 474 Mich at 43, our Supreme Court, quoting *O'Brien*, 410 Mich at 15, stated:

"[T]he instant statute is both one of limitation and one of repose. For actions which accrue within six years from occupancy, use, or acceptance of the completed improvement, the statute prescribes the time within which such actions may be brought and thus acts as a statute of limitations. When more than six years from such time have

elapsed before an injury is sustained, the statute prevents
a cause of action from ever accruing."

We have surveyed the Michigan and federal cases interpreting MCL 600.5839 and specifically the language "an improvement to real property." As gleaned from the caselaw, the following factors should be examined in determining whether the PRP used in the art classroom addition constituted an improvement to real property: (1) the general nature of the PRPs, (2) whether the PRPs were integral components or essential to the operation of the art classroom addition, (3) whether the purchase, placement, and utilization of the PRPs required the expenditure of labor and money and increased the usefulness of, added value to, bettered, or enhanced the capital value of the art classroom addition in relationship to the structure's intended use and purpose, and (4) the permanence of the PRPs, taking into consideration whether they were affixed, bolted, mounted, or otherwise physically annexed to the art classroom addition and whether their placement has been, or was intended to be, longstanding or for an indefinite period, remembering that "permanent" does not mean "eternal" and that the ability to remove an object without damaging realty does not preclude a finding of permanence. *Miller-Davis Co v Ahrens Constr, Inc*, 285 Mich App 289, 304-305; 777 NW2d 437 (2009), rev'd on other grounds 489 Mich 355 (2011) (installation of wooden roof deck system constituted an improvement to real property); *Pitsch*, 233 Mich App at 601 (removal of underground storage tank was not an improvement to real property); *Abbott v John E Green Co*, 233 Mich App 194, 197, 200-201; 592 NW2d 96 (1998) (installation of asbestos-containing materials in a foundry constituted an improvement to real property); *Travelers Ins Co v Guardian Alarm Co of Mich*, 231 Mich App 473, 478-480; 586 NW2d 760 (1998),

overruled in part on other grounds by *Miller-Davis Co*, 489 Mich 355 (installation of a new circuit panel box, a transformer, and a fire alarm system were each an improvement to real property); *Pendzsu v Beazer East, Inc*, 219 Mich App 405, 410-412; 557 NW2d 127 (1996) (relining and enlarging factory furnaces and coke ovens using asbestos-containing materials constituted an improvement to real property); *Fennell v John J Nesbitt, Inc*, 154 Mich App 644, 651; 398 NW2d 481 (1986) (installation of an HVAC system was an improvement to real property); *Adair v Koppers Co, Inc*, 741 F2d 111, 114-116 (CA 6, 1984) (a coal-handling conveyor at a plant constituted an improvement to real property); *Poly-Flex Constr, Inc v Neyer, Tiseo & Hindo, Ltd*, 582 F Supp 2d 892, 905 (WD Mich, 2008) (installation of a leak-detection system at a landfill was an improvement to real property); *Oakwood Hosp & Med Ctr v Goodwin Electronics*, 183 F Supp 2d 936, 940-941 (ED Mich, 2001) (televisions in hospital rooms constituted an improvement to real property); *Dominguez v Lanham Machinery Co, Inc*, 122 F Supp 2d 852, 856 (WD Mich, 2000) (installation of an industrial-sized oven at a bakery was an improvement to real property); *Matthews v Beloit Corp*, 807 F Supp 1289, 1292-1293 (WD Mich, 1992) (installation of a "stack calender" within a papermaking machine constituted an improvement to real property); *Phillips v Langston Corp*, 59 F Supp 2d 696, 703-705 (ED Mich, 1999) (machine to make boxes from cardboard constituted an improvement to real property).[3]

With respect to the general nature of the PRPs, unlike the objects or tangible items at issue in several of

[3] Decisions rendered by lower federal courts are not binding but may be considered persuasive. *Walters v Nadell*, 481 Mich 377, 390 n 32; 751 NW2d 431 (2008).

the cases cited earlier, the PRPs were part of the original designs and plans for the construction of the art classroom addition itself and the PRPs were actually incorporated into and placed in the addition as part of and during the construction project. As the trial court stated, the PRPs were "part and parcel" of the construction project. There can be no reasonable dispute that the construction project, which entailed the erection of a building, involved an improvement to real property. And given that utilization of the PRPs was part of the construction project, it is logical to conclude that installation of the PRPs themselves constituted an improvement to real property, as opposed to being viewed in isolation and outside the scope of the overall improvement. Additionally, the instant case does not present, nor should it have, any argument that placement of the PRPs in the art classroom addition was a simple repair matter rather than an improvement to real property. While the PRPs are movable, and indeed designed to be movable, the fact remains that they serve as *walls* in the art classroom addition. In general, interior walls create hallways, rooms, closets, and other spaces within a structure, and they are typically a significant feature of any building and construction project. We conclude that this factor favors a holding that the PRP that fell on Caron constituted an improvement to real property.

With respect to the question whether the PRPs were integral components or essential to the operation of the art classroom addition, we answer in the affirmative. Consistent with Caron's deposition testimony, there is no dispute that the art classroom addition was constructed for the purpose of providing space for instructional art classes and studio projects. Without the PRPs, there would simply be a large open area that would not be conducive to the wide range of separate, distinct, and overlapping art activities, classes, and projects being

carried out at any given time. Furthermore, as mentioned earlier, the PRPs serve as interior walls, and a wall, permanent or portable, is an integral component of any building. The PRPs also have attached shelves that provide storage space for art supplies. We conclude that this factor favors a holding that the PRP that fell on Caron constituted an improvement to real property.

With respect to whether the purchase, placement, and utilization of the PRPs required the expenditure of labor and money and increased the usefulness of, added value to, bettered, or enhanced the capital value of the art classroom addition in relationship to the structure's intended use and purpose, we again answer in the affirmative. As indicated in footnote 1 of this opinion, defendants maintain that subcontractor Wally Kosorki & Co, Inc., actually constructed the PRPs, and there is a work-change order in the record signed by Christman and Cranbrook referring to the installation of PRPs by Kosorki. This document lists a cost of $9,225 for Kosorki's services in relationship to the change order. Accordingly, there is evidence of an expenditure of labor and money associated with the acquisition and placement of the PRPs as part of going forward with the construction project, and plaintiffs make no claim nor present any documentary evidence to the contrary. Furthermore, the PRPs increased the usefulness of or bettered the art classroom addition in light of the addition's intended use and purpose, which was to provide space for art classes and studio projects, given that use of the PRPs allowed for the creation of multiple, private, and varied class or work areas that are suitable for the particular needs of a class, instructor, or student. In regard to whether the PRPs enhanced the capital value of the art classroom addition or added value to the addition in a

monetary sense,[4] there was no specific documentary evidence, such as an appraisal, showing that the dollar or market value of the addition was increased as a result of the presence and use of the PRPs. That said, it is entirely reasonable to infer that, to some measurable degree, the capital value of the art classroom addition was enhanced or increased by the PRPs and that the PRPs added value to the addition. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (court's task in reviewing a motion for summary disposition entails consideration of the documentary evidence and all the reasonable inferences arising from that evidence). This inference is based on the evidence regarding the nature and characteristics of the PRPs, the beneficial manner in which the PRPs are used in connection with the building and school activities, and the expenditure of funds on the purchase and installation of the PRPs. We note that, in regard to this factor as well as the two factors addressed earlier, plaintiffs essentially present no arguments; the factors are virtually ignored by plaintiffs. We conclude that the present factor favors a holding that the PRP that fell on Caron constituted an improvement to real property.

Finally, with respect to the permanence of the PRPs, this is the factor that plaintiffs stress requires a holding that the placement of the PRPs in the art classroom addition did not constitute an improvement to real property. Plaintiffs repeatedly contend that the PRPs are not permanent because they are not affixed to the building itself and can be moved, which was the case with the PRP that fell on Caron; therefore, the PRPs, or the act of putting the PRPs in the building, did not constitute an improvement to real property. Plaintiffs

---

[4] For the reasons already alluded to, the PRPs added value to the art classroom addition on a nonmonetary level.

maintain that because the PRPs are fully portable, MCL 600.5839 cannot possibly apply. There is no documentary evidence indicating that the particular PRP in question had been affixed, annexed, or otherwise physically connected to the realty when Caron and the graduate student attempted to move it.[5]

We first note that the permanence factor is not dispositive but is merely one of the factors to consider, *Pendzsu*, 219 Mich App at 412, and the other three factors, apparently without dispute, weigh in favor of a finding that the PRP constituted an improvement to real property. Moreover, given their characteristics and that use of the PRPs in the art classroom addition has been longstanding and will apparently continue for an indefinite period, we conclude that the PRPs are permanent in nature despite their portability.

There is no evidence that the PRPs have ever been removed from the building itself or that there is a plan to someday remove the PRPs. Walls, even portable walls, tend to be permanent in the sense that they generally remain at the site or location of the structure they serve, and the PRPs are crucial to the support and operation of Cranbrook's art classes and activities. Osler's manager on the construction project averred in an affidavit that Osler "provided the design for partition walls within the classroom addition." And blueprints of the construction project suggest that the PRPs

---

[5] During Caron's deposition testimony explaining the preliminary steps taken in the attempt to move the PRP, she gave no indication whatsoever that the PRP had to first be disconnected from the floor, ceiling, or any architectural wall. Plaintiffs' expert, W. Thomas Munsell, a registered professional engineer, averred in his affidavit that when he examined the PRP, it was "fully movable on its casters and [was] not connected, affixed, attached or joined to the architectural walls, ceiling, floor, windows or any other element of the structure of the room or the building."

were shaped, sized, or otherwise custom-designed, fit-ted, and constructed specifically for the art classroom addition and its dimensions, rendering them less adapt-able, if at all, for use in a different building or environ-ment. Furthermore, we are not dealing with flimsy, lightweight, easily movable or removable partitions that can be displaced at a whim, which is evident from the accident that occurred. Plaintiffs' expert, Munsell, averred that the PRP at issue is $7^1/2$ feet tall and weighs approximately 2,100 pounds. The trial court noted that the PRPs are "substantial." There is no indication that the PRPs are anything but a permanent part of the art classroom addition despite the lack of annexation.

A case that we find persuasive is *Reames v Hawthorne-Seving, Inc*, 949 SW2d 758 (Tex App, 1997), wherein an employee at a ceramic tile plant was injured by a conveyor belt while he was working, and the conveyor was the first of three that operated in tandem to move powder used in making tiles to a storage area.[6] The second and third conveyors were bolted to the floor, but the first conveyor was not so bolted and instead "was on wheels solely because it was directly under [a] dryer, which needed to be cleaned regularly and could not be cleaned unless the first conveyor could be moved aside." *Id*. at 760. The plaintiffs argued that the first conveyor was not an improvement to real property under the Texas statute of repose "because it was not annexed to the realty and was easily moved." *Id*. at 762. The Texas Court of Appeals held:

> We note that in considering whether an item is attached to realty, the supreme court looks to the mode and suffi-ciency of the annexation, *either real or constructive*. In this

[6] Judicial decisions from foreign jurisdictions are not binding but may be considered persuasive. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

case, although the first conveyor was on wheels, and therefore not annexed to the realty physically, it was constructively annexed to the realty. The first conveyor was not bolted to the floor, or physically annexed to the realty, as the other two conveyors were only because if it had been bolted to the floor, workers could not clean the dryer located above the conveyor. The first conveyor was never moved for any purpose other than to reach the dryer and was never moved more than four or five feet. Furthermore, the conveyor was so adapted to the use of the realty, making tiles, that a critical phase of the process, transporting the dried powder from the dryer to the storage silo, could not be performed unless the first conveyor was in place. Under these circumstances, we conclude that although the first conveyor technically could be moved, it was constructively annexed to the realty because [the company] never intended to move it more than a few feet as necessary for its operations and never moved it for any other purpose. The first conveyor was constructively annexed to the property as effectively as the other conveyor belts were, and it was specifically adapted to the purpose of the tile plant. These factors are all evidence of [the company's] intent that the conveyor be an addition to the freehold, and we conclude the first conveyor was an improvement as a matter of law. [*Id.* (citation omitted).]

The same can be said for the PRPs in this case, which were also designed or intended for a particular building and to be movable for a specific critical function within the building, i.e., altering classroom and studio space as needed. The PRPs are constructively annexed to the art classroom addition.[7]

_____

[7] We also note the case of *Kohn v Darlington Comm Sch*, 2005 WI 99; 283 Wis 2d 1; 698 NW2d 794 (2005), wherein the Wisconsin Supreme Court held that allegedly defective high school football bleachers constituted an improvement to real property under the Wisconsin 10-year statute of repose. The plaintiffs argued that the bleachers were not anchored in the ground and were portable; therefore, they could not constitute an improvement to real property. *Id.* at ¶ 15; 283 Wis 2d at 14. Finding it unnecessary to determine the accuracy of the plaintiffs' factual allega-

Plaintiffs' reliance on *Vegel v Detroit Entertainment, LLC*, unpublished opinion of the United States District Court, Eastern District of Michigan, issued November 20, 2007 (Docket No. 02-CV-73720-DT), aff'd 316 Fed Appx 468 (CA 6, 2009), is misplaced, given that a free-standing restaurant table, which was at issue in *Vegel*, is distinguishable from the PRP, given that a wall is typically a more integral part or component of a structure. To the extent that the cases cannot be distinguished, the *Vegel* opinion is not binding on us and we decline the invitation to invoke it in the manner plaintiffs suggest.

Finally, plaintiffs contend that summary disposition was premature because further discovery was necessary to determine whether the PRPs actually increased the value of the art classroom addition. As indicated earlier, it is reasonable to infer that, given the nature and characteristics of the PRPs, the purchase and installation costs of the PRPs, and the benefits of using the PRPs to create and adjust instructional and studio space, they necessarily increased the value of the art classroom addition to some extent. Summary disposition is generally premature if discovery is not complete. *Prysak v R L Polk Co*, 193 Mich App 1, 11; 483 NW2d 629 (1992). "However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Id*. "[A] party opposing a motion for summary disposition because discovery is not complete

---

tions and taking notice of the bleachers' large dimensions, their purpose and utility, the intent to keep them in place, and the bleachers' stationary history, the court ruled that annexation was not dispositive and that "a given item need not be actually physically annexed to the land in order to constitute a permanent addition to or betterment of property." *Id*. at ¶¶ 15-27; 283 Wis 2d at 14-21. We find the analysis persuasive and equally applicable here.

must provide some independent evidence that a factual dispute exists." *Mich Nat'l Bank v Metro Institutional Food Serv, Inc*, 198 Mich App 236, 241; 497 NW2d 225 (1993). Mere speculation that additional discovery might produce evidentiary support is not sufficient. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540-541; 687 NW2d 143 (2004). Plaintiffs fail to identify any prospective evidence that would indicate that the PRPs added no capital value to the art classroom addition, nor is there a fair chance of any such evidence existing. Accordingly, we reject plaintiffs' argument.

Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs pursuant to MCR 7.219.

MARKEY and WHITBECK, JJ., concurred with MURPHY, C.J.