*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE RICHARDS,

Plaintiff/Counterdefendant-Appellant,

v

BOYNE USA, INC. and KARL SCHWEITZER,

Defendants/Counterplaintiffs-
Appellees,

and

BOYNE COUNTRY SPORTS,

Defendant.

UNPUBLISHED
October 13, 2022

No. 357644
Charlevoix Circuit Court
LC No. 18-052426-NO

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Plaintiff Michelle Richards appeals as of right the trial court's order dismissing her remaining claim against defendants, Boyne USA, Inc. ("Boyne") and Karl Schweitzer (collectively, "defendants").[1] On appeal, Richards challenges the trial court's orders granting summary disposition to defendants and denying Richards's motion to extend discovery. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from a January 1, 2018 ski accident in which Richards suffered injuries to her leg. Boyne is a ski resort and lodge located in Charlevoix County, Michigan. Schweitzer is a Boyne ski instructor. The day she was injured, Richards and her daughters were enrolled in ski

---

[1] Richards's complaint also named Boyne Country Sports as a defendant. The parties stipulated to dismiss all claims against Boyne Country Sports and it is not a party to this appeal.

-1-

lessons with Schweitzer. This was Richards's second time skiing, so she asked Schweitzer for a "very beginner" lesson. Schweitzer began the lesson on a number of beginner, or "green" hills. The lesson included instruction on how to perform "J" turns to control their speed as they skied downhill. After some practice, Schweitzer asked Richards if she wanted to stay on the current hill, or "go up one more." Richards responded: "Whatever you think. . . . I'm just a beginner."

Richards observed that the next hill was much steeper than the earlier hills (she later learned that this was a more advanced, or "blue," hill). She expressed her concern to Schweitzer, telling him she "wasn't going down that hill." Schweitzer assured her she would be fine, stating: "We're just going to do the J turns just like I showed you." Schweitzer skied a number of yards down the hill, followed by Richards's daughters. He stopped, turned, and waited for Richards to start down the hill. Richards started down the hill, but she lost control and landed facedown in the snow with her skis behind her. Ski patrol arrived and transported Richards by toboggan to Boyne's medical clinic. Doctors later diagnosed her with torn ligaments in her leg.

Richards filed a nine-count complaint against defendants alleging, among other things, ordinary negligence, gross negligence, violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901, *et seq*, and breach of contract. Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court granted defendants' motion in part, dismissing Richards's claims of negligence and violations of the MCPA. Richards moved the trial court to extend discovery to allow her expert to examine the Boyne ski hills during the winter, but the trial court denied the motion.

Richards filed an interlocutory appeal to this Court. We vacated the grant of summary disposition regarding Richards's claims of gross negligence,[2] and directed the trial court to apply the gross negligence standard articulated in *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003). On remand, the trial court denied defendants' motion for summary disposition of Richards's gross negligence claims under MCR 2.116(C)(10). Defendants moved for reconsideration, which the trial court granted. The parties stipulated to the dismissal of the remaining claims.[3] This appeal followed.

## II. ORDINARY NEGLIGENCE

Richards argues the trial court erred in dismissing her claims of ordinary negligence because neither the releases of liability she signed before her ski lesson, nor Michigan's Ski Area Safety Act (SASA), MCL 408.321, *et seq.*, barred these claims. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo the grant of summary disposition. *Xu*, 257 Mich App at 266. Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court's explanation of its basis for summary disposition was not a model of clarity. During oral

---

[2] *Richards v Boyne USA, Inc.*, unpublished order of the Court of Appeals, entered April 23, 2020 (Docket No. 351601).

[3] Included in this dismissal was defendants' counterclaim, which is not at issue in this appeal.

argument, Richards's counsel repeatedly asked the trial court to issue a written opinion explaining its reasoning, but the trial court refused. The absence of a written opinion makes it difficult on appeal to ascertain the exact subsection under which the trial court granted summary disposition. Despite this uncertainty, this Court "will not reverse where the right result is reached for the wrong reason." *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993). We conclude summary disposition was appropriate under MCR 2.116(C)(7) because the release of liability barred Richards's ordinary negligence claims.

> When reviewing a motion for summary disposition under MCR 2.116(C)(7), an appellate court accepts all the plaintiff's well-pleaded allegations as true, and construes them most favorably to the plaintiff, unless specifically contradicted by documentary evidence. The court must consider all affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted, and the motion should be granted only if no factual development could provide a basis for recovery. [*Xu*, 257 Mich App 266-267 (citations omitted).]

## B. LAW AND ANALYSIS

The Legislature enacted the SASA "in an effort to provide some immunity for ski-area operators from personal-injury suits by injured skiers." *Anderson v Pine Knob Ski Resort, Inc*, 469 Mich 20, 23; 664 NW2d 756 (2003).[4] By the same token, ski operators are generally free to protect themselves beyond the terms of the SASA by requiring that their guests sign a release of liability. See *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 617-618; 513 NW2d 428 (1994) ("It is not contrary to this state's public policy for a party to contract against liability for damages caused by

---

[4] MCL 408.342 of the SASA states:

> (1) While in a ski area, each skier shall do all of the following:
>
> (a) Maintain reasonable control of his or her speed and course at all times.
>
> (b) Stay clear of snow-grooming vehicles and equipment in the ski area.
>
> (c) Heed all posted signs and warnings.
>
> (d) Ski only in ski areas which are marked as open for skiing on the trail board described in section 6a(e).
>
> (2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

its own ordinary negligence."). Richards's complaint made several allegations of ordinary negligence against Schweitzer and Boyne, respectively. Defendants moved for summary disposition, in part, because Richards's ordinary negligence claims were barred by (1) the SASA; and (2) the release of liability signed by Richards. We conclude that the release of liability signed by Richards barred her ordinary negligence claims. Therefore, it is unnecessary to analyze whether Richards's ordinary negligence claims were otherwise barred by the SASA.

"A release of liability is valid if it is fairly and knowingly made." *Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 201; 428 NW2d 26 (1988).

> The scope of a release is controlled by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. If the terms of the release are unambiguous, contradictory inferences become subjective, and irrelevant, and the legal effect of the language is a question of law to be resolved summarily. [*Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540-541; 549 NW2d 612 (1996) (quotation marks and citations omitted).]

"A release is knowingly made even if it is not labeled a 'release,' or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the releasor to sign the release through a strategy of trickery." *Xu*, 257 Mich App at 272-273. "A release is invalid if (1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct." *Skotak*, 203 Mich App at 618.

Richards executed two releases of liability in relation to her ski trip. Relevant to this appeal is the release executed just before she began her ski lesson. It stated, in part:

> I: Michelle Richards acknowledge that winter sports activities, including but not limited to skiing, snowboarding, snow tubing, snow biking and snowblading, carry significant risks of serious personal injury, death or property damage. We acknowledge that various features involved in terrain park activities enhance and increase all of these risks. We also know that there are natural, mechanical and environmental conditions and risks, associated with winter sports activities, which independently or in combination with participant's actions may cause severe or even fatal injuries to participant or others. We agree that participant alone is responsible for their safety while participating in winter sports activities. We acknowledge that Boyne USA and the BOYNE Student Freeride Program, its members and their employees and any agents, representatives, officers, directors, or affiliates of any person or entity associated with them are not responsible for participant's safety. We specifically RELEASE and DISCHARGE in advance, those parties from any liability whether known or unknown, even that liability which may arise out of negligence or carelessness on the part of persons or entities mentioned above. We agree to accept all responsibility for the risks, conditions and hazards which may occur whether they now be known or unknown.

Being fully aware of the risks, conditions and hazards of winter sports activities, we HEREBY AGREE TO WAIVE, RELEASE AND DISCHARGE any and all claims for damages for death, personal injury or property damage which we (participant and parent/guardian in [sic] behalf of a minor for whom this is given) may have or which may hereafter accrue as a result of any participation in winter sports activities, against any person or entity identified above whether such injury was foreseeable or not, including any such claims regarding facility design or any features which may be contained in a terrain park or maintenance or the design or the condition of any equipment utilized by participant while engaged in winter sports activities.

We further agree to forever HOLD HARMLESS and INDEMNIFY all persons and entities identified above, generally and specifically, from any and all liability for death, personal injury or property damage, resulting in any way from participant's participating in winter sports activities.

We have been given an opportunity to inspect the area facilities and terrain parks and agree to accept the conditions as they exist.

\* \* \*

WE HAVE READ THE ABOVE TERMS OF THIS CONTRACT, UNDERSTAND THEM AND AGREE TO ABIDE BY THEM. WE, THE UNDERSIGNED PARTICIPANT . . . ACKNOWLEDGE THAT WE HAVE READ AND UNDERSTAND THE ABOVE CONTRACT.

Richards's complaint alleged her injuries arose from Schweitzer's and Boyne's negligence. She contended Schweitzer failed to account for her skill level when determining which hill to take the group and that Schweitzer ignored Richards's request to stay on easier, "green," hills—instead, taking the group on the icy, and more difficult, "blue" hill. Richards alleged that Boyne was responsible for Schweitzer's purported negligence.

Richards's ordinary negligence claims are clearly barred by the above release. Richards specifically agreed she "alone [was] responsible for their safety while participating in winter sports activities." And, she agreed to "WAIVE, RELEASE AND DISCHARGE" Boyne and its employees from liability. To the extent Richards contends the conditions were icy that day, she agreed to "accept the conditions as they exist."

Richards's arguments in this appeal are unavailing. We reject her first argument that the release was not enforceable because, at the time of her injury, she was participating in ski lessons. She notes that the release pertained to "winter sports activities," including: "skiing, snowboarding, snow tubing, snow biking and snowblading." Under her reasoning, because ski lessons were not specifically listed, her injuries that occurred during ski lessons were outside the terms of the release. In making this argument, Richards ignores the full language of the release which stated "winter sports activities," "includ[ed] but [were] not limited to" the listed activities. We ascertain the "parties' intentions from the plain, ordinary meaning of the language of the release." *Gortney*, 216 Mich App at 540. Given the plain language of the release, and the fact it was signed in

preparation for Richards's ski lesson, it is reasonable to conclude that it was intended to release defendants from liability related to the ski lesson.

Richards agrees that under the release she was "fully aware of the risks, conditions and hazards of winter sports activities." However, she then argues that under the cannon of construction, *ejusdem generis*, negligent conduct was not a risk, condition, or hazard of the listed winter sports activities. Again, Richards ignores the plain language of the release, which states: "We specifically RELEASE and DISCHARGE in advance, those parties from any liability whether known or unknown, even that liability which may arise out of *negligence or carelessness* on the part of persons or entities mentioned above." (Emphasis added.) Plainly, the release discharged defendants from any liability arising from negligence, and Richards's argument to the contrary is meritless.

Richards next argues that summary disposition was inappropriate because it was not reasonably foreseeable that Schweitzer would ignore her express direction that she wanted to stay on green hills. Under the terms of the release, Richards agreed that she "alone [was] responsible for [her] safety," not Boyne or its employees. Thus, it does not matter whether it was reasonably foreseeable that Schweitzer would ignore her directives, because, under the terms of the release, she *alone* was responsible for ensuring her safety.

Richards's fourth argument contends that the trial court erred in granting summary disposition because there were remaining questions of fact as to whether Schweitzer complied with "ski instructor policies and handbooks." Again, under the terms of the release, Richards "alone" was responsible for her safety—thus, compliance with ski instructor policies and handbooks was irrelevant.

Finally, Richards disputes the trial court's apparent reliance on this Court's unpublished and not binding decision, *Berisaj v LFT Club Operations Co, Inc*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2019 (Docket No. 341401).[5] *Berisaj* is irrelevant here because the issue in that case was whether the defendant-personal trainer was grossly negligent in his training sessions with the plaintiff. *Id*. at 2. Even if the trial court relied on *Berisaj* as to the question of ordinary negligence—which we are not convinced that it did—Richards's ordinary negligence claims are nevertheless barred under the plain language of the releases.

## III. GROSS NEGLIGENCE

Richards next argues that the trial court erred when, on defendants' motion for reconsideration, it vacated its earlier ruling denying defendants' motion for summary disposition and granted defendants' motion for summary disposition because Richards failed to demonstrate a genuine dispute of material fact that defendants' conduct rose to the level of gross negligence. We disagree.

---

[5] See *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010), citing MCR 7.215(C)(1) ("Although unpublished opinions of this Court are not binding precedent . . . they may . . . be considered instructive or persuasive.").

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's grant or denial of a motion for reconsideration. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*. A trial court also abuses its discretion when it makes an "erroneous interpretation or application of law." *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012).

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). Our review of a trial court's decision under subsection (C)(10) should consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Sallie v Fifth Third Bank*, 297 Mich App 115, 117-118; 824 NW2d 238 (2012) (quotation marks and citation omitted). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 118 (quotation marks and citation omitted).

As a preliminary matter, we must clarify the basis of our review. On remand from this Court, the trial court entered an order denying defendants' motion for summary disposition as to the issue of gross negligence. Defendants moved for reconsideration, which the trial court granted even though defendants did not present any issue or facts that were substantially different from those presented in their motion for summary disposition. When a party moves for reconsideration, they "must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). However, MCR 2.119(F)(3) affords trial courts "considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *In re Moukalled Estate*, 269 Mich App 708, 714; 714 NW2d 400 (2006) (quotation marks and citation omitted). A trial court may "decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). On the other hand, a trial court may also extend a "second chance" to the moving party "even if the motion for reconsideration presents nothing new." *Id*. (quotation marks and citation omitted).

Richards's arguments in this appeal suggest that the trial court erred when it granted defendants' motion for reconsideration even though the motion, overall, presented nothing new. However, trial courts have considerable discretion in granting motions for reconsideration, even when no new facts are presented. The trial court could not have abused its discretion based solely on the fact that defendants' motion for reconsideration did not contain new facts. Because there is no error in the trial court's granting of reconsideration despite the absence of new facts, the trial court's decision was, essentially, a grant of defendants' motion for summary disposition. Therefore, we will review this issue de novo through the lens of a motion for summary disposition. See *Van Reken v Darden, Neef & Heitsch*, 259 Mich App 454, 456; 674 NW2d 731 (2003) (applying a de novo review after a trial court granted a motion for reconsideration).

## B. LAW AND ANALYSIS

To prevail on a claim of gross negligence, a plaintiff must meet a very high bar. Gross negligence is conduct so reckless that it demonstrates a substantial lack of concern for whether an injury results. *Xu*, 257 Mich App at 269. In discussing this standard, this Court has explained:

> Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (footnote omitted).]

Viewing the facts in a light most favorable to Richards, the evidence shows that: (1) the ski lessons started with the completion of three "green" hills; (2) the group practiced "J" turns in an effort to learn how to proceed slowly down the slopes; (3) when Schweitzer asked Richards whether she wanted "to go up one more," Richards took that to mean proceed to another green hill; and (4) Schweitzer left Richards at the top of the blue hill despite Richards's expressed concern about her ability to traverse the hill.

The issue in this case is whether Schweitzer's decision to leave Richards at the top of the blue hill, even though she told him she was not confident in her ability to ski down this hill, amounts to conduct that is so reckless that it demonstrates a substantial lack of concern for whether an injury results. Almost certainly, this conduct creates a question of fact as to whether Schweitzer committed ordinary negligence,[6] but we are not convinced this conduct gives rise to a question of fact regarding gross negligence.

This was not Richards's first experience skiing—indeed, she testified she had skied once before in 2016. During this ski outing, the group spent their time before Richards's fall learning techniques for traversing steeper territory. Richards did not say she had any difficulty with the lesson or that she had any physical limitations. Richards presented no evidence that Schweitzer forced her to ski down the blue hill. While Richards stated she felt she had "no choice" and had to follow Schweitzer down the hill, she presents no evidence showing she made any attempt to find an alternative route. Further, Richards's description that Schweitzer appeared indifferent to her concerns conflicts with her other evidence showing Schweitzer encouraged Richards to use the

---

[6] However, as we discussed in the preceding section, Richards's execution of the release of liability precludes her claims of ordinary negligence.

techniques she learned to traverse the blue hill—he waited and watched Richards move down the blue hill, he stayed with Richards until ski patrol arrived after she fell, and he called to check on her later in the day. In short, under Richards's description of the events, Schweitzer's conduct did not demonstrate a substantial lack of concern for Richards's safety.

Richards's arguments on appeal are largely premised on what she believes were incorrect factual findings by the trial court. These arguments ignore the scope of our review on appeal. As discussed, our review of this issue is de novo. "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Thus, it does not matter whether the trial court made incorrect factual findings, because we review these issues independently and without any deference to the trial court.

We also do not find persuasive Richards's comparison of this case with our unpublished and not binding decision[7] in *Hawkins v Ranch Rudolph, Inc.*, unpublished per curiam opinion of the Court of Appeals, issued September 27, 2005 (Docket No. 254771). The *Hawkins* plaintiffs brought a gross negligence claim against the defendants after one of the plaintiffs was injured during a guided horseback ride. *Id*. at 2. We reversed the trial court's grant of summary disposition of the plaintiffs' gross negligence claim, stating: "A reasonable person could conclude that [the instructor's] conduct of taking plaintiffs on a fast ride given their known lack of experience unreasonably added to the risks of an the already dangerous activity . . . ." *Id*. at 7.

Unquestionably, both this case and *Hawkins* involve plaintiffs who, in hindsight, participated in activities that exceeded their abilities. But this case is distinguishable from *Hawkins* because in *Hawkins*, there was no evidence that the injured plaintiff appreciated beforehand the potential danger of his horse bolting during the horseback ride. Indeed, the plaintiff, who was a complete novice to horseback riding, readily agreed to speeding up the horseback ride. *Id*. at 2. Thus, gross negligence could reasonably be imputed to the defendant-instructor because the facts showed she was the only person who knew of, and could have disregarded, the substantial risk of harm to the plaintiff. In contrast, Richards stated that she understood the potential danger posed by the blue hill. She testified that while at the top of the hill, looking down, she observed it was steeper than any other hill she had traversed that day and she did not believe she could successfully navigate it. Despite these concerns, she chose to ski down the hill anyway. To conclude that Schweitzer was grossly negligent would require a determination that there was evidence showing he disregarded a substantial risk of harm to Richards. However, under Richards's own explanation of the facts, it was *Richards* who disregarded the substantial risk of harm.

In sum, Richards fails to present a genuine dispute of material fact showing that Schweitzer was grossly negligent. Viewing the facts in a light most favorable to Richards shows Schweitzer took a number of steps to ensure her safety. Thus, the trial court did not err in granting summary disposition of Richards's gross negligence claims.

---

[7] See *Paris Meadows, LLC*, 287 Mich App at 145 n 3.

IV. MCPA

Next, Richards argues the trial court erred in dismissing her claims under the MCPA.[8] We disagree.

A. STANDARD OF REVIEW

Again, it is unclear the court rule under which the trial court granted summary disposition of Richards's MCPA claim because the trial court did not explain its reasoning. We presume summary disposition was granted under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Our review of a trial court's decision under subsection (C)(10), considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Sallie*, 297 Mich App at 117-118 (quotation marks and citation omitted). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 118. Our Supreme Court explained the burden-shifting framework of a motion for summary disposition under MCR 2.116(C)(10) as follows:

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

"The interpretation of statutes and court rules is . . . a question of law subject to de novo review." *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

B. LAW AND ANALYSIS

"The MCPA prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Zine v Chrysler Corp*, 236 Mich App 261, 275; 600 NW2d 384 (1999), citing MCL 445.903(1). "[A] person who suffers loss as a result of a violation of [the MCPA] may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees." MCL 445.911(2). However, a party cannot bring an action under the MCPA with respect to "[a] transaction or conduct specifically authorized under

---

[8] Richards's MCPA claim was largely premised on allegations against defendant, Boyne Country Sports. Issues involving Boyne Country Sports are not relevant to this appeal and our review involves the single allegation against defendants, Boyne and Schweitzer.

laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a).

Defendants' motion for summary disposition was premised on their contention that the MCPA does not apply in this case because, under MCL 445.904(1)(a), skiing is an activity regulated by the SASA. They also contended that Richards did not present enough facts to support her MCPA claim. Richards's arguments on appeal dispute these assertions. She avers that the MCPA applies to this case because the conduct at issue—ski instruction—is not otherwise regulated by the SASA. She also argues there was adequate evidence demonstrating violations of the MCPA. Because we conclude Richards failed to satisfy her burden as the nonmoving party, we need not resolve whether the SASA precluded enforcement of Richards's MCPA claim.

Richards's complaint alleged defendants violated MCL 445.903(t) of the MCPA by inducing her to "[e]nter[] into a contract in which [Richards] waived or purported to waive her right to sue, without having the waiver clearly stated and without [Richards] specifically consenting to it." Defendants' motion for summary disposition contended this argument was "clearly belied by the fact that [Richards] was presented waivers on two separate occasions." They specifically noted that the release Richards signed immediately before her ski lesson started stated in the title "I Will Not Sue." Attached to the motion for summary disposition were copies of the releases which articulated the waiver. Defendants established their burden as the moving party because they set forth facts that they believed demonstrated no genuine dispute of material fact, coupled with appropriate evidentiary support.

Under subsection (C)(10)'s burden-shifting framework, the burden then shifted to Richards "to establish that a genuine issue of disputed fact exists." *Quinto*, 451 Mich at 362. This required her to present "documentary evidence establishing the existence of a material factual dispute." *Id*. at 363. Richards's response to the motion for summary disposition argued she was presented the releases in a "perfunctory fashion" and defendant did not adequately explain the terms of the release. Richards did not attach any evidence showing defendant presented the release in a "perfunctory fashion." Indeed, her exhibits included her deposition testimony where she testified she only "glanced" at the release.[9] To the extent this statement creates a dispute of fact, it favors defendants because it suggests it was Richards, not defendants, who gave the releases perfunctory treatment. Moreover, there is no merit to Richards's other argument that defendants did not adequately explain the terms of the release because parties to a contract are presumed to understand what they are signing. See *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567-568; 596 NW2d 915 (1999) (quotation marks and citation omitted) ("This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms."). In short, summary disposition was proper as to Richards's MCPA claim because defendants met their burden as the moving party, but Richards did not.

---

[9] We note that this argument appears to conflict with Richards's earlier statement in her brief on appeal in which she states: "[Richards] has never denied that she signed the read [sic] and signed the Release as a condition of taking the lesson."

## V. DISCOVERY

Richards's last argument contends that the trial court erred by refusing to extend discovery. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion motions to extend discovery. *Decker v Trux R Us, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014). Again, "[a] trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Farm Bureau Ins Co*, 328 Mich App at 672.

## B. LAW AND ANALYSIS

MCR 2.301(B)(1) allows a court to set "the time for completion of discovery . . . by an order entered under MCR 2.401(B)." MCR 2.401(B)(2)(a)(v) provides that the court may enter a scheduling order that establishes a schedule for discovery to be completed. In determining whether to extend discovery, "[t]he trial court should consider whether the granting of discovery will facilitate or hamper the litigation" and "[f]actors such as the timeliness of the request, the duration of the litigation and the possible prejudice to the parties should also be considered." *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990). "Summary disposition is generally premature if discovery is not complete." *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645; 828 NW2d 99 (2012). "However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Id.* (quotation marks omitted). A party who opposes a motion for summary disposition because discovery is not complete must provide independent evidence of the existence of a factual dispute. *Id*. "Mere speculation that additional discovery might produce evidentiary support is not sufficient." *Id*.

Richards's motion to extend discovery was premised on her contention that a longer discovery period was necessary so her expert, Stanley Gale, could inspect the subject ski hill during the winter months. Richards also argued that a longer discovery period was appropriate because she "continue[d] to undergo physical rehabilitation on her knee." Richards first filed the complaint in September 2018. Despite her opinion that inspection of the hill was necessary during the winter months, Richards did not explain why she did not retain an expert to inspect the hill during the 2018-2019 ski season. Moreover, it is unclear what new evidence this inspection would have uncovered. Richards's claims were premised, in part, on her contention that it was icy the day of the accident, but it does not follow that the conditions would be the same or even similar on the day of the inspection. Finally, other than stating her rehabilitation is ongoing, Richards provided no explanation why a longer discovery period was necessary in relation to the injuries to her leg. Given these factors, the trial court did not abuse its discretion in denying Richards's motion to extend discovery.

On appeal, Richards notes that the "details of the manner and location of [Richards's] injury" were not certain until after the 2018-2019 ski season. Presumably, this argument was intended to explain why Richards's expert did not make an earlier inspection of the ski hill. However, this argument was not presented to the trial court; therefore, it cannot serve as a basis

for the trial court to have abused its discretion. Moreover, this argument does not explain why Richards or her family members—who were present after she fell—could not have explained to Richards's expert the "details of the manner and location of [Richards's] injury."

Richards also argues on appeal that, had discovery been extended, she could have deposed a number of witnesses, including Boyne's "corporate representative" and members of the ski patrol. Richards's request to depose Boyne's "corporate representative" was in relation to defendants' counterclaim, which was later dismissed by stipulation of the parties. Thus, Richards's inability to depose a "corporate representative" is irrelevant to issues involving Richards's claims. Further, Richards's motion did not ask the trial court to extend discovery so Richards's could gather information from members of the ski patrol. It cannot be an abuse of discretion for a trial court to fail to consider arguments that a party never presented in the first instance.

Finally, Richards notes that after this Court remanded the case to the trial court, she requested "additional discovery . . . ." In making this argument, Richards does not provide any explanation of her request for "additional discovery" on remand or why it would support her claim. "It is not enough for an appellant in [their] brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate [their] arguments, and then search for authority either to sustain or reject [their] position." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). Richards's failure to adequately develop this argument constitutes a waiver of her argument and we decline to consider it now.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron